UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTWOIN HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 11 C 4697 |
| | ) |
| ROBERT R. ROTH, MATTHEW T. | ) Judge George M. Marovich |
| DIBLICH, TIMOTHY J. BELCIK, | ) |
| PHILIP M. DUCAR, ROBERT T. GOINS, | ) |
| CARLO VIRGILIO, JAMES EGAN, | ) |
| and THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antwoin Hunt ("Hunt") filed a ten-count complaint against defendants Robert R. Roth ("Roth"), Matthew T. Diblich ("Diblich"), Timothy J. Belcik ("Belcik"), Philip M. Ducar ("Ducar"), Robert T. Goins ("Goins"), Carlo Virgilio ("Virgilio"), James Egan ("Egan") and the City of Chicago. The plaintiff and the individual defendants have filed cross-motions for partial summary judgment in an attempt to narrow the issues that will need to be tried to a jury. The plaintiff has also agreed to dismiss voluntarily certain claims. For the reasons set forth below, the Court grants in part and denies in part defendants' motion for summary judgment. The Court denies plaintiff's motion for summary judgment.

**I.   Background**

In connection with their cross-motions for summary judgment, the parties put forth just a smattering of facts, presumably because they seek summary judgment with respect to only some of the claims and some of the parties. Another reason why the facts outlined below are

somewhat sparse is that, in some instances, the parties cited evidence that did not actually support the asserted fact.[1] Unless otherwise noted, the following facts are undisputed.

Plaintiff Antwoin Hunt is a citizen of the United States. Defendants Roth, Diblich, Belcik, Ducar, Goins, Virgilio and Egan are (and were at all relevant times) officers of the Chicago Police Department and, therefore, employees of the City of Chicago. At all relevant times, the individual defendants were acting under color of state law.

Hunt and five of the individual defendants encountered each other in the early morning hours of July 12, 2009. At that time, Hunt was in the parking lot behind his mother's home, for a barbecue, on west Douglas Avenue in Chicago. For reasons that are not clear from the record, Officers Diblich, Belcik, Ducar, Goins and Roth all arrived–in uniform–at the alley behind Hunt's mother's home. Officers Ducar and Goins exited their vehicle and began talking to people on the parking slab behind Hunt's mother's home. Officers Diblich and Belcik exited their police vehicles and pursued and stopped one Terrence Edwards, who was walking toward the back of Hunt's mother's home.

Hunt saw Diblich and Belcik detain Terrence Edwards and said, "this is some bullshit." Officer Roth grabbed Hunt's hand, pushed him against a fence and attempted to place him into

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

custody. This was a surprise to Hunt, who did not expect to be taken into custody. Hunt has put forth evidence (which defendants have disputed) that his arm was bent up behind his back and that he was not resisting or struggling. Officers Diblich, Belcik, Ducar and Goins noticed the interaction between Hunt and Officer Roth when they heard the banging of the fence. As Hunt describes it, "A tussle went on, they was trying to put the cuffs on me or whatever, I lost my balance and I believe I fell onto one of the officers or something like that." It is undisputed that Hunt fell on top of Officer Roth. After Hunt and Officer Roth hit the ground, Officer Belcik handcuffed Hunt.

Hunt put forth evidence (disputed by defendants) that, after Officer Belcik handcuffed Hunt, someone (Hunt does not know who) grabbed Hunt around his neck, put his knees into Hunt's back, pulled Hunt off the ground and dragged Hunt into a police car. It is undisputed that Officer Roth put Hunt into the police car used by Officers Roth, Ducar and Goins and rode with Hunt to the station. (It is undisputed that neither Officer Diblich nor Officer Ducar ever put their hands on Hunt.) Hunt stated, to the three officers who arrested Hunt and brought him to the station, "this" was "bullshit" and asked whether they would have broken up the party if it weren't in Hunt's neighborhood.

At the police station, Officer Roth told Officers Diblich and Ducar his "version" of the events, although it is not clear what, specifically, Roth told them. Officers Diblich, Ducar, Belcik and Goins completed paperwork and processing of Hunt, who, at some point, ended up in a cell.

At about 9:00 a.m., Detectives Egan and Virgilio arrived at the police station where Hunt was being held. Part of the job of detectives Egan and Virgilio was to determine whether charges could be brought against Hunt so that they could make a recommendation to an assistant

state's attorney. Detectives Egan and Virgilio discussed Hunt's situation with Officers Roth, Diblich, Belcik, Ducar and Goins.

Detective Virgilio, together with Assistant State's Attorney William Hall ("ASA Hall"), interviewed Hunt in a cell. Detective Virgilio felt that there was enough evidence to substantiate a charge of aggravated battery against Hunt and drafted a felony complaint against Hunt for aggravated battery to a police officer. The parties dispute whether Detective Virgilio signed the felony complaint. Detective Virgilio (but not Detective Egan) discussed the case with ASA Hall. ASA Hall chose to continue the investigation, rather than to approve or decline the charges against Hunt. Detective Virgilio or Egan (it is not clear who) placed a "hold past court call" on Hunt, who was, accordingly, kept in custody until the morning of July 13, 2009.

Hunt was charged with aggravated battery to a police officer (a felony) and resisting/obstructing a police officer (a misdemeanor). On Monday, July 13, 2009, Hunt was taken before a court, which approved probable cause and set bond.

The charges against Hunt were tried to a jury on September 26, 2010. Neither Detective Virgilio nor Detective Egan testified against Hunt. The jury found Hunt not guilty with respect to one count of aggravated battery. It is not clear whether other charges were tried to a jury.

## II.  **Summary judgment standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. Hunt's claim for illegal entry onto private property

In Count I, plaintiff seeks relief under § 1983 for illegal entry onto private property. In response to the defendants' motion for summary judgment, plaintiff agreed to dismiss this claim voluntarily. Accordingly, Count I is dismissed with prejudice.

### B. Hunt's claim for false arrest

In Count II, plaintiff seeks relief under § 1983 for false arrest. Hunt brings this claim against defendants Roth, Diblich, Belcik, Ducar and Goins. Four of these defendants–Officers Diblich, Belcik, Ducar and Goins–move for summary judgment on this claim.

These four defendants argue that Hunt cannot prevail on his false arrest claim against them, because there was probable cause for the arrest. As defendants point out, probable cause for arrest is an absolute defense to plaintiff's false arrest claim. *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer *at the time of the arrest* would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty.*, __ F.3d __, __, 2013 WL 322920 at *5 (7th Cir. Jan. 29, 2013) (emphasis added). "Officers are also afforded an extra layer of protection through the defense of qualified immunity (also known as arguable probable cause)." *Thayer v. Chiczewski*,

__ F.3d __, __, 2012 WL 6621169 at *6 (7th Cir. Nov. 27, 2012). In false arrest cases, officers are entitled to qualified immunity where a reasonable officer could have mistakenly believed that probable cause existed. *Id*. Whether or not probable cause (or arguable probable cause) exists "depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, __ F.3d at __, 2013 WL 322920 at *6.

In this case, Hunt was arrested for resisting arrest. The question, then, is whether a reasonable person could have believed, at the time of Hunt's arrest, that he had committed the crime of resisting arrest. Under Illinois law, the crime of resisting arrest is a misdemeanor. 720 ILCS 5/31-1(a). That "statute prohibits a person from committing a physical act of resistance or obstruction–a physical act that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest." *Illinois v. Agnew-Downs*, 404 Ill.App.3d 218, 226 (2nd Dist. 2010). "'Resisting' or 'resistance' means withstanding the force or effect of or the exertion of oneself to counteract or defeat." *Id*. The Court agrees with defendants that a reasonable officer in their shoes could have believed that Hunt resisted arrest. Their attention was drawn to the interaction between Hunt and Officer Roth when they heard the sound of Officer Roth pushing Hunt against a fence. Hunt admitted that while Officer Roth was attempting to put handcuffs on him, he lost his balance and fell. It is undisputed that he fell on top of Officer Roth. Given that Hunt fell on top of Officer Roth, a reasonable officer could have concluded that Hunt had exerted force toward Officer Roth, and such an exertion of force falls within the definition of resisting arrest under Illinois law. Accordingly, Hunt's arrest was supported by probable cause.

Because Hunt's arrest was supported by probable cause, defendants Diblich, Ducar, Belcik and Goins are entitled to judgment as a matter of law on plaintiff's claim for false arrest (Count II).

C.   **Hunt's claim for excessive force**

In Count III, Hunt asserted against five individual defendants (Roth, Diblich, Belcik, Ducar and Goins) a claim for excessive force. Four of those defendants (Diblich, Belcik, Ducar and Goins) have moved for summary judgment on Count III. In response to defendants' motion, plaintiff agreed to dismiss voluntarily Count III against defendant Officers Diblich, Ducar and Goins. Accordingly, Count III is dismissed with prejudice as to Diblich, Ducar and Goins. The Court will consider the merits of Officer Belcik's motion for summary judgment on Count III.

Officer Belcik argues that he is entitled to summary judgment on Count III, because the force he used was reasonable as a matter of law. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their person, house, papers, and effects, against unreasonable searches and seizures." Const. Amend. IV. The Court analyzes claims of excessive force during arrest under the Fourth Amendment's "objective reasonableness" standard. "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest," but the amount of force used must be objectively reasonable. *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). The test for reasonableness does not lend itself to mechanical application. Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Reasonableness is considered not from hindsight but from the perspective of a reasonable officer at the scene. *Graham*, 490 at 396. The test is objective, and the officer's intentions (whether good or bad) do not matter. *Graham*, 490 at 397.

As Belcik points out, it is undisputed that the only force he used was to put handcuffs on Hunt. Belcik argues that putting handcuffs on Hunt was reasonable, as a matter of law. The Court agrees. Hunt has not alleged, let alone put forth evidence, that the handcuffs were painful or caused him injury. Such evidence is necessary (though not sufficient) to establish that the use of handcuffs constituted unreasonable force. *See Stainback*, 569 F.3d at 773 (use of handcuffs not unreasonable where the "Officers did not use handcuffs in a manner that would clearly injure or harm a typical arrestee.").

Hunt does not dispute that the use of handcuffs, alone, will not support a claim for excessive force. Instead, he argues that someone grabbed Hunt around his neck, put his knees into Hunt's back, pulled Hunt off the ground and dragged Hunt into a police car. Hunt, however, has put forth no evidence that that someone was Belcik. The undisputed evidence is that Officer Roth is the one who put Hunt into the police car. Belcik is not liable for Officer Roth's conduct. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (An individual can be liable under § 1983 only if he caused or participated in the constitutional deprivation).

Because there is no evidence that Officer Belcik used unreasonable force against Hunt, Officer Belcik is entitled to summary judgment on Count III.

### D. Hunt's false arrest claim against Detectives Virgilio and Egan

In Count V, Hunt asserts a claim for "false arrest and illegal detention" against Detectives Virgilio and Egan. In Count V, Hunt alleges that his original arrest was "without probable cause" (Complt. ¶ 47) and that the "arrest of plaintiff continued after plaintiff was taken to the station because defendants VIRGILIO and EGAN, along with the initial arresting officers, decided to continue the arrest and detention." (Complt. ¶ 48). Detectives Virgilio and Egan move for summary judgment on this claim, as does Hunt.

#### 1. Detectives' motion for summary judgment on Count V

Detectives Virgilio and Egan argue that they had probable cause to detain Hunt. Specifically, they argue that they relied on the statements of Officer Roth in determining whether probable cause existed, and that they are entitled to rely on Officer Roth's statements. The detectives are correct on the law. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) ("In making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth. . . . Fellow law enforcement personnel are among the witnesses whose accounts the arresting officer may rely upon."). The problem with their argument, however, is that they have not put forth undisputed facts showing that they are entitled to judgment as a matter of law on this issue. Although it is undisputed that Detectives Virgilio and Egan spoke with Officer Roth, defendants have not put forth evidence of what, specifically, Officer Roth said to them. So, it is impossible for this Court to conclude that they had, as a matter of law, probable cause to detain Hunt.

Detectives Virgilio and Egan have not shown that they are entitled to judgment as a matter of law on Count V, so their motion for summary judgment on that count is denied.

### 2. Hunt's motion for summary judgment on Count V

Hunt also moves for summary judgment with respect to Count V. Oddly, though, Hunt argues not that Detectives Virgilio and Egan are liable for detaining him without probable cause but rather that they are liable for preventing him from receiving a *Gerstein* probable cause hearing within a reasonable period of time after his arrest. In *Gerstein v. Pugh*, the Supreme Court held that when one is arrested without a warrant, the Fourth Amendment requires a prompt judicial determination of probable cause. *Gerstein v. Pugh*, 420 U.S. 103 (1975). In *County of Riverside v. McLaughlin*, the Supreme Court concluded that "a judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*," although a hearing within 48 hours could violate *Gerstein* if "the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

Defendants argue that Hunt is attempting at add a claim that he never included in his complaint. The Court agrees. A claim that he was denied a probable cause hearing within a reasonable period of time after arrest is different from a claim that he was arrested and detained without probable cause. In Count V, Hunt specifically alleges that he was arrested without probable cause and that Detectives Virgilio and Egan continued his arrest by detaining him at the station. Nowhere in his complaint does Hunt allege that he was detained for an unreasonable period of time or that Detectives Virgilio and Egan (or anyone else, for that matter) prevented him from receiving a probable cause hearing within a reasonable amount of time. Hunt does not

even mention a probable cause hearing in Count V. It appears to this Court, that in Count V, Hunt was attempting to hold Detectives Virgilio and Egan liable for false arrest even though they were not present when Hunt was first arrested. Nothing about Count V suggests to the Court that Hunt was attempting to state a claim that Detectives Virgilio and Egan delayed unreasonably his probable cause hearing.

The Court agrees with defendants that it is too late, in summary judgment briefs, to attempt to add a claim to a case. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997). Hunt's motion for summary judgment is denied

### E. Hunt's first amendment retaliation claim

In Count VI, Hunt claims that every individual defendant retaliated against him for exercising his first amendment rights to free speech. Six defendants–Officers Diblich, Belcik, Ducar and Goins and Detectives Virgilio and Egan–move for summary judgment. In response to defendants' motion, Hunt agreed to dismiss this claim against defendants Virgilio and Egan. Accordingly, Count VI is dismissed with prejudice as to Virgilio and Egan.

Officers Diblich, Belcik, Ducar and Goins argue that they are entitled to qualified immunity on this claim, because there was probable cause for Hunt's arrest and there is no clearly-established right to be free from a retaliatory arrest supported by probable cause. The Court agrees. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). In *Reichle*, the Supreme Court held that an officer was entitled to qualified immunity with respect to a claim that he made an arrest in retaliation for the arrestee's exercise of free speech rights, because a

right to be free from retaliatory arrest that is supported by probable cause was not clearly established. *Reichle*, 132 S.Ct. at 2093. The Supreme Court noted that it had never recognized such a right, and it declined to do so in that case. *Reichle*, 132 S.Ct. at 2093. Nor is the right clearly established in the Seventh Circuit. *Thayer v. Chiczewski*, __ F.3d at __, 2012 WL 6621169 at *13 (7th Cir. Nov. 27, 2012) (holding that defendant officer was entitled to qualified immunity on claim for retaliatory arrest where arrest was supported by probable cause). Because the Court has concluded that the officers had probable cause to arrest Hunt and because there is no clearly-established right to be free from a retaliatory arrest supported by probable cause, the officers are entitled to qualified immunity on the retaliatory arrest claim.

Accordingly, Officers Diblich, Belcik, Ducar and Goins are entitled to summary judgment on Count VI.

### F. Hunt's claim for § 1985 conspiracy

In Count VII, Hunt asserts a § 1985 conspiracy claim against all of the individual defendants. All of the individual defendants have moved for summary judgment on Count VII. In response to defendants' motion, plaintiff has agreed to dismiss Count VII against all defendants. Thus, Count VII is dismissed with prejudice.

### G. Hunt's claim for § 1983 conspiracy

In Count VIII, Hunt seeks relief pursuant to § 1983 for conspiracy. "Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). Thus, to prevail, Hunt must establish both: "(1) an express or implied agreement among defendants to deprive

him of his constitutional rights, and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Lyons v. Adams*, 257 F. Supp.2d 1125, 1134 (N.D. Ill. 2003).

"Although a conspiracy may be demonstrated by circumstantial evidence, 'mere conjecture' of a conspiracy is not sufficient to avoid summary judgment." *Lyons*, 257 F. Supp.2d at 1134. In his response to defendants' motion for summary judgment, Hunt does not point to any circumstantial evidence from which a reasonable jury could conclude that a conspiracy existed. The closest he comes is to argue:

> In the case at hand, there is circumstantial evidence that defendants agreed to arrest and detain plaintiff, even after the Assistant State's Attorney declined to approve charges, in order to punish plaintiff for being so vocally critical of their actions and in fear that he was going to sue them because family members had videotaped their actions.

(Plaintiff's Response Brief at 13). He does not, however, say what that circumstantial evidence is. The Court does not see any evidence in the record from which a reasonable jury could conclude that defendants reached an express or implied agreement to deprive Hunt of his constitutional rights.

Accordingly, defendants are entitled to judgment as a matter of law on Count VIII. The Court grants defendants' motion for summary judgment on Count VIII.

### H.  Hunt's claim for malicious prosecution

In Count IX, Hunt asserts a claim for malicious prosecution against every individual defendant. Six of the individual defendants have moved for summary judgment.

#### 1. Officers Diblich, Belcik, Ducar and Goins

First, Officers Diblich, Belcik, Ducar and Goins move for summary judgment on the grounds that there was probable cause to prosecute Hunt for aggravated battery of a police

officer. To establish malicious prosecution, plaintiff must show, "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504, 512 (Ill. S.Ct. 1996) (quoting *Joiner v. Benton Comm. Bank*, 82 Ill.2d 40, 45 (Ill. S.Ct. 1980)).

The four officers argue that, in determining whether probable cause existed, they were entitled to rely on information they received from Officer Roth. The four officers are correct on the law. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) ("Fellow law enforcement personnel are among the witnesses whose accounts the arresting officer may rely upon."). Their argument, though, falls short on the facts. It is undisputed that Officer Roth told "his version" of the event to Officers Ducar and Diblich. The record, however, does not contain evidence of what, specifically, Officer Roth told Officers Ducar and Diblich, so it is impossible to determine whether what they heard amounted to probable cause for a charge of aggravated battery. Nor is there any evidence as to what, if anything, Officer Roth told Officers Goins and Belcik.

In short, Officers Diblich, Belcik, Ducar and Goins have not shown that they are entitled to judgment as a matter of law on Count IX, so their motion for summary judgment on Count IX is denied.

## 2. Detectives Virgilio and Egan

Detectives Virgilio and Egan move for summary judgment on Count IX on the basis that neither was sufficiently involved with the prosecution of Hunt to be held liable for malicious prosecution.

As noted above, in order to prevail on his malicious prosecution claim, Hunt must establish that each defendant, among other things, commenced or continued an original criminal or civil judicial proceeding. *Swick v. Liautaud*, 169 Ill.2d at 512. Under Illinois law,

> Liability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present.

*Frye v. O'Neill*, 166 Ill.App. 3d 963, 975 (4th Dist. 1988).

With respect to Detective Egan, the Court agrees that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could conclude that he commenced or continued a prosecution against Hunt. It is undisputed that Detective Egan did not discuss Hunt's case with an assistant state's attorney, did not draft the felony complaint and did not sign the felony complaint. Detective Egan is entitled to judgment as a matter of law on Hunt's malicious prosecution claim, and the Court hereby grants him summary judgment on that claim.

With respect to Detective Virgilio, the plaintiff has put forth evidence from which a reasonable jury could conclude that he commenced or continued a criminal prosecution against Hunt. The evidence is undisputed that Detective Virgilio, together with ASA Hall, interviewed Hunt and that Detective Virgilio felt that enough evidence existed to substantiate a charge of aggravated battery against Hunt. It is also undisputed the Detective Virgilio drafted a felony complaint against Hunt. The parties dispute whether Detective Virgilio signed the complaint,

but that is a question for the jury. Detective Virgilio does not argue that he is entitled to summary judgment on the basis of probable cause or that there is a lack of evidence of malice. Detective Virgilio's motion for summary judgment on Count IX is denied.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion for summary judgment. The Court denies plaintiff's motion for summary judgment. Count I is dismissed with prejudice as to all defendants. On Count II, defendants Diblich, Belcik, Ducar and Goins are granted summary judgment. Count III is dismissed with prejudice as to defendants Diblich, Ducar and Goins. Defendant Belcik is granted summary judgment on Count III. Count VI is dismissed with prejudice as to defendants Virgilio and Egan. On Count VI, defendants Diblich, Belcik, Ducar and Goins are granted summary judgment. Count VII is dismissed with prejudice as to all defendants. On Count VIII, all defendants are granted summary judgment. On Count IX, defendant Egan is granted summary judgment.

This case is set for status on April 2, 2013 at 11:00 a.m.

ENTER:

George M. Marovich
United States District Judge

DATED: February 22, 2013